CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 28 2005

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| GAYLE A. HINKLEY, | ) Civil Action No. 7:05CV00042 |
| Plaintiff, | ) |
| | ) **MEMORANDUM OPINION** |
| v. | ) |
| | ) |
| JO ANNE B. BARNHART, | ) By: Hon. Glen E. Conrad |
| Commissioner of Social Security | ) United States District Judge |
| | ) |
| Defendant. | ) |

Plaintiff filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for a period of disability, disability insurance benefits and supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423, and 42 U.S.C. § 1383 et seq., respectively. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

The court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the conditions for entitlement established by and pursuant to the Act. If substantial evidence exists for the Commissioner's findings, and those findings were reached through application of the correct legal standard, the conclusion must be affirmed. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). It is more than a mere scintilla of evidence, but may be less than a preponderance. Laws v. Celebrezze, supra.

The plaintiff, Gayle A. Hinkley, was born on June 1, 1954. She received a bachelor's degree in fine arts in 1998. Ms. Hinkley has past work experience as a decorator product

specialist, scenic artist, frame shop supervisor, picture framer, and cook. She filed an application for disability insurance benefits and supplemental security income on August 25, 2003, alleging that she became disabled on July 17, 2003. For purposes of the claim for disability insurance benefits, the record reveals that plaintiff met the insured status requirements of the Act at all relevant times covered by the final decision of the Commissioner. See 42 U.S.C. §§ 414 and 423.

Ms. Hinkley's claims were denied upon initial consideration and reconsideration. She requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held and the ALJ issued an opinion on September 17, 2004, denying Ms. Hinkley's claim for a period of disability, disability insurance benefits, and supplemental security income. The ALJ found that plaintiff was not under a "disability" as defined in the Act, even though her hepatitis C was a "severe" impairment within the meaning of the administrative regulations, because her impairment did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. See 20 C.F.R. §§ 404.1520(d) and 416.920(d). Furthermore, the ALJ determined that the plaintiff had the residual functional capacity to occasionally lift or carry 50 pounds, frequently lift or carry 25 pounds, stand or walk approximately 6 hours in an 8-hour workday, and sit approximately 6 hours in an 8-hour workday. The ALJ found that Ms. Hinkley had an unlimited ability to push or pull with her upper and lower extremities, and that she could not tolerate exposure to fumes, odors, or other hazardous toxic materials. Applying the five step sequential disability analysis established under 20 C.F.R. § 404.1520, the ALJ concluded his consideration of Ms. Hinkley's case after determining that she was capable of performing past relevant work as a sales associate at J.C. Penney, frame shop supervisor, and picture framer. Having exhausted all available administrative remedies, the plaintiff now appeals to this court.

2

The initial consideration for determining a claimant's disability is whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Ms. Hinkley briefly worked as a companion sitter to a friend with multiple sclerosis and an art teacher after her alleged onset date of July 17, 2003, but the ALJ determined that neither of these positions, nor her part time work as a sales associate at J.C. Penney rose to the level of substantial gainful activity. 20 C.F.R. § 404.1572. The ALJ found that the plaintiff began to work at J.C. Penney in early March 2004 and continued her employment through August 6, 2004. (TR 19). She had frequent absences while employed at J.C. Penney, and worked less than 20 hours a week. (TR 35, 149, 151).

The second and third inquiries under §§ 404.1520 and 416.920 concern the severity of the claimant's impairments. The ALJ found that Ms. Hinkley's hepatitis C is severe, but that her impairment does not meet or medically equal a listed impairment. (TR 20). The fourth factor for consideration is whether the impairment prevents the claimant from performing her past relevant work. The ALJ concluded that Ms. Hinkley was able to return to her previous work roles as a sales associate, frame shop supervisor, and picture framer. (TR 24). The ALJ determined that, based on her limitations, Ms. Hinkley would not be able to perform her past work in paint sales, paint mixing, set building, or as a cook. (TR 24). The ALJ did not reach the fifth consideration as to whether other work roles that the claimant could perform exist in significant number in the national economy because he found that she could return to some of her past relevant work roles as they generally exist in the national economy. Thus, the ALJ denied Ms. Hinkley's claims for benefits under both programs. See 20 C.F.R. § 404.1520(f) and 416.920(f).

Subsequent to the ALJ's decision, Ms. Hinkley filed a request for review with the Social Security Administration's Appeals Council. On December 10, 2004, the Appeals Council denied plaintiff's request and adopted the ALJ's opinion as the final decision of the Commissioner. Having exhausted all administrative remedies, the plaintiff now appeals to this court.

Although a plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether the plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. §§ 423(d)(2) and 1382c(a). There are four elements of proof which must be considered in making such an analysis. These elements are: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

The record in Ms. Hinkley's case indicates that the Commissioner's final decision is supported by substantial evidence. The ALJ's opinion reflects a thorough review of the opinions of the physicians who examined Ms. Hinkley, as well as the vocational expert's testimony. The ALJ carefully considered the plaintiff's statements regarding her alleged symptoms and he determined the extent to which these symptoms could reasonably be accepted as consistent with the objective medical record and other evidence. Therefore, there is substantial evidence to support the Commissioner's finding that the plaintiff is not disabled.

Ms. Hinkley stated that the fatigue, dizziness, nausea and vomiting, memory loss, and arthralgias resulting from her hepatitis C first began to bother her in February 11, 2003, and that her symptoms became disabling on July 17, 2003. Prior to 2003, the plaintiff contracted hepatitis

4

C, possibly through a blood transfusion. On February 11, 2003, Ms. Hinkley tested positive for the hepatitis C virus. (TR 278). Dr. Alan V. Burnstein performed a liver biopsy on Ms. Hinkley on March 21, 2003, which revealed a Grade I mild portal chronic inflammatory change and Stage 0 portal fibrosis. He also noted an "exceedingly low viral load of 290 IU/ml," and stated that "[t]hese circumstances are extremely favorable." (TR 165). Dr. Burnstein recommended no further treatment at the time. (TR 165, stating that "[t]he overwhelming majority of hepatologists in the United States would not recommend combination chemotherapy, which is quite toxic, for such minimal and prognostically nonprogressive disease"). Ms. Hinkley had complications from the biopsy, specifically, a pneumothorax which was treated through the use of a pigtail catheter. (TR 163). She sought a second opinion from Dr. Vikas N. Chitnavis, who noted that, as of June 26, 2003, she did not have any general complaints and, in fact, "states that she feels much better. She also feels that she has more energy." (TR 202). Dr. Chitnavis advised Ms. Hinkley to use a mask and gloves at her job at Sherwin Williams so as to avoid unnecessary contact with chemicals. (TR 200).

Notes from follow-up visits with Dr. Karen S. Miller to discuss her treatment options indicate that the plaintiff complained of fatigue, nausea, vomiting, arthralgias, and anxiety. (TR 168). Dr. Miller noted that Ms. Hinkley had discussed Interferon treatment with her treating physicians, but elected to wait. On August 15, 2005, Dr. Miller noted that the plaintiff had red palms, and complained that her hands itched, a symptom of hepatitis C. (TR 167).

The plaintiff also has a long history of smoking, and testified that she had cut back to two cigarettes a day. (TR 48). She indicated that she understood that cigarettes are very toxic for the liver. The plaintiff also testified to experiencing severe headaches at least twice a month, usually

5

accompanied by nausea and vomiting. (TR 40). She also noted that she experiences memory loss and an inability to concentrate, as well as depression and anxiety attacks. (TR 40). The plaintiff complained of anxiety during her October 18, 2002 office visit to Dr. Miller. (TR 177). Dr. Miller also saw Ms. Hinkley on November 11, 2002 for complaints of "really bad anxiety attacks" during which she could not catch her breath and experienced jitteriness and headaches. (TR 176). Following this examination, Dr. Miller's assessment was that Ms. Hinkley experienced situational panic attacks, which she proposed to treat with Xanax. (TR 176). On December 19, 2002, Ms. Hinkley saw Dr. Miller again, primarily to obtain a refill of her medications. Dr. Miller again stated that her assessment was "chronic anxiety." (TR 175). Ms. Hinkley returned to Dr. Miller twice in February 2003, and on both occasions the doctor noted that Ms. Hinkley continued to experience anxiety. (TR 173-174). With respect to subsequent visits over the course of the year, Dr. Miller noted that Ms. Hinkley had "situational anxiety" and "situational depression." (TR 167-72). Dr. Miller did not refer the plaintiff to a mental health expert for further examination of these complaints, but continued her on medication.

On April 24, 2003, Ms. Hinkley contacted Dr. Paul F. Page after being exposed to Xylene for over one hour. She stated that she was experiencing vomiting, headaches, nausea, weakness, and a sore throat. (TR 171). Dr. Page advised her to rest until the toxins were out of her system. Ms. Hinkley contacted Dr. Miller on the following day with the same symptoms and Dr. Miller wrote a work excuse for April 24-25. (TR 170).

On June 1, 2004, Dr. Miller completed a clinical assessment of pain form which stated that the plaintiff experienced pain to such an extent as to be distracting to adequate performance of daily activities or work. (TR 239). On July 17, 2003, Dr. Miller completed a Physician's

6

Certificate to accompany Ms. Hinkley's Statement of Claim for Disability Benefits from Sherwin Williams. (TR 255-58). Dr. Miller determined that the probable duration of Ms. Hinkley's disabling condition was long term, and placed the following physical restrictions on plaintiff's work: lifting, climbing ladders, long hours, and exposure to solvents and chemicals. (TR 256).

Ms. Hinkley also suffers from carpal tunnel syndrome. As early as September 10, 2002, she was seen by Dr. Miller regarding complaints of pain in both arms and hands. (TR 178). On September 12, 2003, the plaintiff was evaluated by Dr. Bonnie Nock, who determined that the bilateral median mononeuropathy affecting the motor and sensory nerves across the plaintiff's wrist were consistent with carpal tunnel syndrome. (TR 190). She was seen by Dr. Joan H. Rose on October 1, 2003 for further complaints of carpal tunnel syndrome, and Dr. Rose discussed options for treatment with her, including steroid injections, splinting, or interposition arthroplasty. (TR 196-97). Dr. Sidney S. Loxlely also saw Ms. Hinkley regarding her carpal tunnel syndrome, and reported that if she were to have a decrease of the median nerve, there would be no recovery for her because she could not tolerate steroid treatment due to her hepatitis. (TR 254). The plaintiff testified before the ALJ that "[a]s long as I don't overuse my hands and I wear braces, I wear them at night and during the day, then I'm okay." (TR 39). She stated that she has chosen not to have surgery to repair the potential nerve damage because the procedure would require the use of cortisone which may adversely impact her liver. (TR 39).

At oral argument before this court, the plaintiff asserted that the ALJ failed to give controlling weight to Dr. Miller's opinions and erred in determining that the plaintiff's depression and anxiety are not severe impairments. The plaintiff went on to assert that the ALJ should have given greater consideration to her mental and cognitive impairments. However, the

7

records from Dr. Miller indicate that the chief source of the doctor's medical assessments regarding the plaintiff's anxiety, depression, and fatigue was the plaintiff's own statements. The ALJ considered the fact that Ms. Hinkley had been prescribed sleep medication for her anxiety problems and that she testified that the medication was helping. The ALJ also noted that the record did not reflect symptoms associated with an affective disorder or anxiety disorder, and that the two state agency psychologists, who made independent reviews of the records, concluded that the plaintiff did not have a severe mental impairment. (TR 20). The court finds that the ALJ's decision that Ms. Hinkley's mental impairments were not severe is supported by the record and in accordance with the Social Security regulations. See 20 C.F.R. §§ 404.1527(d).

The ALJ based his decision that the plaintiff had the residual functional capacity to return to her previous work as a frame shop supervisor, picture framer, and sales associate at J.C. Penney on his finding that her allegations of total incapacitation resulting from her impairments are inconsistent with the objective medical findings and complete record evidence. This court's review of the record constrains the court to agree with the ALJ's assessment. The plaintiff stated in her Daily Activities Questionnaire that she is generally able to complete the activities of daily living without assistance, except that she gets dizzy when taking showers and experiences fatigue and dizziness while performing some activities. (TR 128-29). She also stated that she is able to read for an hour at a time and that she listens to the radio or watches television for an hour or two each day. (TR 130-31).

Based on this record, the court concludes that the Commissioner's final decision is supported by substantial evidence. The ALJ's opinion, which was adopted by the Commissioner, demonstrates a thorough review of plaintiff's statements, testimony, and relevant work history, as

8

well as the evaluations of her treating physicians. The conclusion that plaintiff has residual functional capacity for several of her past relevant work roles is supported by substantial evidence, including plaintiff's own statements and her medical records. Consequently, the record supports the Commissioner's determination that plaintiff is not disabled.

In support of her motion for summary judgment, the plaintiff has submitted new evidence regarding her mental impairments and the progression of her hepatitis C. These documents show that the level of viral copies in Ms. Hinkley's blood stream rose from 292,000 in January 2005 to 12,200,000 in August 2005. The plaintiff also included a record dated September 21, 2005 which indicates that she has suffered symptoms of depression and anxiety during the previous two years. However, this record appears to have been completed by the plaintiff herself and is largely repetitive of evidence already in the record.

A reviewing court may remand a Social Security case to the Commissioner on the basis of newly discovered evidence if four prerequisites are met.

> The evidence must be "relevant to the determination of disability at the time the application was first filed and not merely cumulative." Mitchell v. Schweiker, 699 F.2d 185, 188 (4th Cir.1983). It must be material to the extent that the Secretary's decision "might reasonably have been different" had the new evidence been before her. King v. Califano, 599 F.2d 597, 599 (4th Cir.1979); Sims v. Harris, 631 F.2d 26, 28 (4th Cir.1980). There must be good cause for the claimant's failure to submit the evidence when the claim was before the Secretary, 42 U.S.C. § 405(g), and the claimant must present to the remanding court "at least a general showing of the nature" of the new evidence. King, 599 F.2d at 599.

Borders v. Heckler, 777 F.2d 954, 955 (4th Cir.1985). These new reports do not present evidence that sheds new light on the question of whether plaintiff was disabled within the period prior to the ALJ's decision. Consequently, the court finds that there is no "good cause" for remand of this

9

case for consideration of the new medical evidence. Id. If plaintiff's conditions have worsened in recent months, she may wish to file new applications for benefits.

As a result of finding substantial evidence to support the Commissioner's determination of nondisability, the court concludes that the Commissioner's final decision must be affirmed. In affirming the Commissioner's decision, the court does not imply that the plaintiff is completely free from symptoms that would constrain her capacity to work. However, there is substantial evidence to support the ALJ's opinion that plaintiff has the residual functional capacity to perform her past relevant work as a frame shop supervisor, picture framer, or sales associate. This residual functional capacity disqualifies Ms. Hinkley from receiving a period of disability, disability insurance benefits, and supplemental security income. It must be recognized that the inability to work without any subjective complaints does not of itself render a claimant totally disabled. Craig v. Chater, 76 F.3d 585 (4th Cir. 1996). It appears that the ALJ gave full consideration to all the relevant factors in adjudicating plaintiff's claim for benefits. It follows that all facets of the Commissioner's final decision are supported by substantial evidence.

As a general rule, resolution of conflicts in the evidence is a matter within the province of the Commissioner, even if the court might resolve the conflicts differently. Richardson v. Perales, supra; Oppenheim v. Finch, 495 F.2d 396 (4th Cir. 1974). For the reasons stated, the court finds the Commissioner's resolution of the pertinent conflicts in the record in this case to be supported by substantial evidence. Accordingly, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, supra.

The Clerk is directed to send certified copies of this opinion to all counsel of record.

DATED: This 28th day of November, 2005.

_____
United States District Judge

11